805 A.2d 1108

**Deshawn Lamont SMITH**

v.

**STATE of Maryland.**

**No. 3051, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Aug. 27, 2002.

Geraldine K. Sweeney, Assistant Public Defender (Stephen E. Harris, Public Defender on the brief) of Baltimore, for appellant.

Gary E. Bair, Assistant Attorney General and Michelle W. Cole, Staff Attorney (J. Joseph Curran, Jr., Attorney General, Baltimore and Joseph I. Cassily, State's Attorney for Harford County, Bel Air, on the brief) for appellee.

Submitted before MURPHY, C.J., and DAVIS, HOLLANDER, SALMON, JAMES R. EYLER, SONNER, KENNEY, DEBORAH S. EYLER, ADKINS, KRAUSER, GREENE and SHARER, JJ.

ADKINS, Judge.

We are asked in this case to make a close call regarding the sufficiency of evidence necessary to support a conviction for knowingly transporting an illegal handgun. The single issue presented turns on whether an inference that a person has knowledge of contraband in his or her vehicle can be drawn from the person's status as a driver and lessee of that vehicle. In resolving this issue, we borrow concepts from the body of law defining the crime of possession of controlled dangerous substances ("CDS") and other contraband. We shall hold that a person's status as both the driver and the owner or lessee of a vehicle supports an inference that the person had knowledge of the presence of contraband in the vehicle that is sufficient

to convict, except when there is evidence indicating that a passenger had a greater nexus to the contraband.

Deshawn L. Smith, appellant, was convicted at a bench trial in the Circuit Court for Harford County of transporting a handgun in violation of Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 section 36B.[1] We reverse that conviction.

## FACTS AND LEGAL PROCEEDINGS

Maryland State Trooper Larry Goldstein testified that at around 5:30 on the evening of March 25, 2000, he was working speed enforcement on I–95 in Harford County when he was advised by another trooper to stop a white Buick for speeding. Trooper Goldstein made the stop and parked his vehicle behind the Buick. He approached the vehicle on the drivers side and asked the driver, appellant, for his drivers license and vehicle registration. There were two passengers in the vehicle, Michael Brandon Foster and Dayvon Smith. At trial, Trooper Goldstein did not recall the positions of the passengers in the vehicle, but did remember that one of the passengers had been sitting in the rear seat. According to the trooper, when he approached the Buick, he smelled the odor of burnt marijuana. Goldstein returned to his vehicle and checked appellants drivers license and the registration of the vehicle. After calling for backup, Goldstein returned to the Buick and asked appellant to exit the vehicle. The trooper told appellant that he smelled marijuana. In response, appel-

---

1. Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 section 36B provides, in pertinent part,

   § **36B. Wearing, carrying or transporting handgun; unlawful use in commission of crime.**
   *(b) Unlawful wearing, carrying, or transporting of handguns; penalties.*—Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor. . . .

lant admitted that he had smoked marijuana before he was stopped.

When additional police arrived, the officers arrested appellant and his companions for the marijuana offense. Goldstein then searched the vehicle incident to the arrest of the men.

Trooper Slide, one of the troopers who had arrived to assist Goldstein, opened the trunk of the vehicle. He lifted a jacket in the trunk and told Goldstein that he had found a handgun under the jacket. Trooper Goldstein looked into the trunk and saw a handgun in the center.

At trial, Goldstein testified that the vehicle had a fold-down rear seat so that there was direct access to the trunk from the back seat of the vehicle. He also stated that he had not seen any suspicious movement or attempt to hide anything by the passengers.

Trooper Goldstein removed the handgun from the trunk. The handgun was a silver revolver, a .38 Special with a barrel approximately four inches long. The gun was loaded with five rounds. A subsequent test of the gun determined that it was operable.

None of the men admitted to owning either the gun or the jacket. One of the passengers, Dayvon Smith, however, later admitted to owning the jacket, and the jacket was returned to him.

According to Goldstein, appellant told him that he lived in Essex, Maryland, that he had rented the Buick, that he had had it for a week, and that he was going to New York to return the vehicle.

The trial court found appellant guilty of transporting a handgun. It relied on the fact that appellant had rented the car for a week and was its driver. It reasoned that appellant, as the "driver and occupant of the car, knew of the gun's presence," and "was at least in constructive possession of [it]."

## DISCUSSION

### The Parties' Contentions

Appellant contends that the evidence was insufficient to sustain his conviction. He argues that the location of the gun underneath Dayvon Smith's jacket makes it probable that Smith put the gun in the trunk. He urges that "[w]hether Appellant was aware of his doing so is pure conjecture."

The State responds that "the evidence supports a finding that [appellant] knew of the gun's presence." It points to the fact that appellant was the driver and renter of the vehicle, that appellant was driving the vehicle to New York, that the gun was loaded and not in a container, and that Dayvon Smith later admitted ownership of the jacket but not the gun.

### Standard Of Review

The standard for our review of the sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see White v. State,* 363 Md. 150, 162, 767 A.2d 855 (2001). "Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998). We do not re-weigh the evidence, but "we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendants guilt of the offenses charged beyond a reasonable doubt." *White,* 363 Md. at 162, 767 A.2d 855. "Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused[.]" *Hall v. State,* 119 Md.App. 377, 393, 705 A.2d 50 (1998); *see Finke v. State,* 56 Md.App. 450, 468–69, 468 A.2d 353 (1983), *cert. denied,* 299 Md. 425, 474

A.2d 218, *cert. denied,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984).

## Cases Cited By The Parties

The State cites *Herbert v. State,* 136 Md.App. 458, 766 A.2d 190 (2001), and *Timmons v. State,* 114 Md.App. 410, 690 A.2d 530 (1997), in support of its position. These, as well as the primary cases cited by appellant, involve convictions for possession of CDS. We agree with the parties that CDS possession cases serve as valuable precedent for analysis of this handgun transportation offense.

In CDS possession cases, the State must prove that the defendant had "actual or constructive dominion or control" over the contraband. *See Art.* 27 § 277(s); *White,* 363 Md. at 163, 767 A.2d 855. Knowledge is a required element in the proof of dominion and control. *See Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041 (1988). Knowledge of someone else's possession of CDS, however, is not alone sufficient to show dominion and control. *See White,* 363 Md. at 164–165, 767 A.2d 855. Under Art. 27 section 36B(b), unless the handgun is upon or about the defendant's person, in addition to proving transportation, the State must also show the accused's knowledge that it is being transported.[2] *See* Art. 27 § 36B(b). In

---

**2.** Art. 27 section 36B(b) also states that "[i]t shall be a rebuttable presumption the person is knowingly transporting the handgun[.]" The effect of this mandatory rebuttable presumption is to shift the burden of proving guilt beyond a reasonable doubt from the State to the defendant. The Supreme Court has held that such mandatory rebuttable presumptions are unconstitutional because they relieve the State of its constitutionally imposed burden of proving guilt. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 524–25, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979)(because State must prove beyond reasonable doubt all elements of offense, including required mental state, mandatory rebuttable presumption that has the effect of shifting the burden of proof to the defendant is an unconstitutional denial of due process). The statutory presumption in section 36B(b) apparently predates these Supreme Court cases. *See Shell v. State,* 307 Md. 46, 69, 512 A.2d 358 (1986). We note that neither the State nor the trial court explicitly relied on the section 36B(b) presumption, and that the State does not do so in this appeal. For some time, this presumption has been highly suspect. *See, e.g.,* Maryland Crim. Pattern Jury Instructions 4:35:3 cmt. ("The com-

this case, proof of appellant's transportation of the handgun is not disputed, as the handgun was located in the trunk of the car appellant was driving. What this case turns on, and what CDS possession cases often turn on, is whether the evidence is sufficient to allow an inference that the defendant had knowledge of the contraband.

In *Herbert*, we considered the status of the defendant as a possessor of the premises in which contraband was found as an important factor in sustaining those convictions. We held in *Herbert* that Herberts status as the primary, if not the exclusive, possessor of the apartment makes him criminally responsible for, *inter alia*, the contraband found in the kitchen. *Herbert*, 136 Md.App. at 469, 766 A.2d 190.

In contrast to this case, however, *Herbert* involved contraband found in plain view. In *Herbert*, the police found 28.8 grams of marijuana in plain view in a small living room in which the defendant and his companion were seated, and the companion was smoking a marijuana cigar. Contraband was also found in areas of Herbert's residence to which he alone had access.

*Timmons* is also distinguishable. In *Timmons*, a currency bag containing rare coins and two bags of cocaine was found under the hood of the car in which Timmons was a passenger. A handgun was found next to the currency bag. There was testimony that linked Timmons to the coins and to a key that fit the bag's lock. In contrast, the State in this case showed nothing linking appellant to the gun other than appellant's control over the vehicle. Indeed, the location of the gun, in the trunk of a rented car under Dayvon Smith's jacket, suggested that the gun may have belonged to him, rather than appellant.

---

mittee omitted any reference to the statutory presumption of knowledge, believing that it would be unconstitutional to instruct in the language of the statute")(citing *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and 57 Op. Md. Att'y Gen. 288 (1972)). To the extent that there is any lingering doubt on the question, however, we hold that the "knowledge" presumption in section 36B(b) is unconstitutional.

On the other hand, neither *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997), nor *White,* cited by appellant, is precisely on point. In *Taylor,* the marijuana that Taylor was found guilty of possessing was in the bag of another person, and unlike appellant, Taylor did not have a possessory interest in the motel room in which the marijuana was found. In *White,* the defendant was a passenger, not a driver, in the car that contained cocaine hidden in sealed boxes in the trunk. The Court of Appeals expressed reservations about whether the evidence established beyond a reasonable doubt that White knew of the cocaine hidden in the boxes, but ruled that even if knowledge had been shown, there was no evidence that he exercised dominion and control over the cocaine. *See id.* at 164–65, 767 A.2d 855. The Court noted the limited access to the trunk and lack of possessory interest in the car. *See id.* at 167, 767 A.2d 855.

### Other Maryland Law

Since the briefs were filed in this case, we have upheld the convictions in two cases involving possession of CDS found in a vehicle. *See Johnson v. State,* 142 Md.App. 172, 788 A.2d 678 (2002), *cert. denied,* 369 Md. 180, 798 A.2d 552 (2002), and *Stuckey v. State,* 141 Md.App. 143, 784 A.2d 652 (2001), *cert. denied,* 368 Md. 241, 792 A.2d 1178 (2002). In *Johnson,* we held that the evidence was sufficient to sustain the conviction of a front seat passenger, who was one of two persons in a vehicle in which marijuana was found. The marijuana found in the car was " 'within arm's reach' " of Johnson, the front seat passenger, and was just as close to him as it was to the driver. *See Johnson,* 142 Md.App. at 181, 200, 788 A.2d 678. In addition, the marijuana was "very visible" to and "only inches away" from Johnson, was "not covered, concealed, or otherwise hidden" from him, and the odor of marijuana was " 'powerful' " and " 'overwhelming,' " even to a police officer outside the vehicle. *See id.* at 200–01, 788 A.2d 678. Quoting *Folk v. State,* 11 Md.App. 508, 275 A.2d 184 (1971), we recognized that we have reversed convictions involving joint possession because of:

1) the lack of proximity between the defendant and the contraband, 2) the fact that the contraband was secreted away in hidden places not shown to be within his gaze or knowledge or in any way under his control, and 3) the lack of evidence from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use of the contraband.

*Johnson,* 142 Md.App. at 198, 788 A.2d 678 (quoting *Folk,* 11 Md.App. at 514, 275 A.2d 184).

The facts in this case differ from those in *Johnson.* We agree that appellant had a possessory right in the automobile in which the gun was found.[3] The other *Johnson* factors, however, are not present. Appellant was not closely proximate to the gun. The gun was not within appellant's reach, and appellant did not have ready access to it. The gun was not in appellant's view. The gun was not placed under the front seat or in the glove compartment, from which circumstance we might infer that appellant had seen it being placed there.

Stuckey was the driver of a car in which fifty glass vials of crack cocaine and fifteen small packets of marijuana were found under the driver's seat on the floorboard. The police also found a bag containing crack cocaine on the driver's seat. Although there were three passengers in the car, we upheld Stuckey's conviction for possession of CDS because

(1) [Stuckey] exercised a possessory interest in the car; (2) the narcotics were kept in close proximity to appellant; (3) at the time the car was rented by Hall, the drugs were not under the driver's seat; (4)[Stuckey] cluded police after the police attempted to [e]ffect a routine traffic stop; and (5) fled from the scene of the accident.

*Stuckey,* 141 Md.App. at 174, 784 A.2d 652. *Stuckey* is more like *Johnson* than this case, because the CDS was within

---

**3.** In this regard, appellant would stand in the same position as an owner. Unlike a situation where one borrows a car from the owner, it is unlikely that the rental company or a previous renter would leave contraband in the vehicle.

reach of the defendant, unlike here, where the gun was out of appellant's reach in the back trunk.

In the most recent CDS possession case, the Court of Appeals reversed the defendant's conviction for possession. *See Moye v. State,* 369 Md. 2, 796 A.2d 821 (2002). In *Moye,* a small quantity of CDS was found in an open drawer of the basement of a house. The house was leased by Yolanda and Joseph Bullock, and they, in turn, rented the basement to Greg Benson. Moye, a brother of Mrs. Bullock, had been staying in the upstairs of the house with the Bullocks. When the police responded to a report of a crime occurring at the house, the Bullocks and Benson came out of the house. Benson advised the police that someone else remained in the home. The police, who had set up a barricade around the house, observed Moye on the first floor of the house, looking out different windows, and then looking out a window in the basement. Moye exited the house from the basement area that was rented to Benson.

In reversing Moye's conviction, the Court of Appeals determined that because the record did not reflect how long Moye had been staying at the home, it could not "conclude that Moye had any ownership or possessory right to or in the ... home." *Id.,* 369 Md. at 18, 796 A.2d 821. It also found

nothing in the record establishing Moye's proximity to the drugs during the time he was in the basement. The evidence failed to establish where Moye was located in the basement in relation to the substances in question and the duration of his sojourn. The trial testimony established that one of the officers observed Moye looking out of a window at the back of the basement shortly before he exited the house. The record does not indicate where the window at the back of the basement was in relation to the drugs and paraphernalia found in the counter drawers.... Because the record does not adequately disclose the duration of Moye's visit to the basement, it is impossible to tell if, during the time he traveled into the basement from the first floor of the home prior to exiting through the basement door, he had, in fact, stood over the drawers in the counter

and had the "plain view" vantage point urged by the State.... [T]here were no facts established at trial as to whether Moye was present in the room with the drugs for any given amount of time other than to say that he left the Bullocks's home through the basement door.

*Id.*, 369 Md. at 18–20, 796 A.2d 821.

This case is similar to *Moye* in that there was no specific evidence that appellant had knowledge of the contraband. The State relied on circumstantial evidence of his knowledge— the fact that he was the driver and lessee of the automobile. This case differs from *Moye*, however, in that appellant did have a leasehold possessory interest in the car in which the gun was located.

We have recently recognized that drivers have a greater degree of control over automobiles than passengers. In *Wallace v. State*, 142 Md.App. 673, 791 A.2d 968 (2002), we reversed a back seat passenger's conviction for possession with intent to distribute cocaine, holding that his motion to suppress the search of his person should have been granted because the police did not have probable cause to arrest and search a passenger in the automobile. *See id.* at 705, 791 A.2d 968. There, the police stopped the car for traffic infractions. During the traffic stop, a drug detection dog scanned the vehicle and made two positive alerts for the presence of drugs at the rear seam of the driver's side front door. Based on the canine alert, the police performed a warrantless search of both the car and Wallace. They discovered cocaine on Wallace's person. We held that although the police could lawfully detain the vehicle's occupants while the search of the vehicle was being conducted, and could frisk the occupants if they suspected that one or more of them was armed with a weapon, the warrantless **search** of Wallace was illegal because there was no other evidence to link him to the drugs smelled by the canine. *See id.*

In reaching this conclusion, we drew a distinction between the status of a driver of a car and that of a passenger, on the

ground that the driver was "operating and 'controlling' " the vehicle.

A passenger in a vehicle generally is not perceived to have the kind of control over the contents of the vehicle as does a driver. Therefore, there must be some link between the passenger and the criminal conduct in order to provide probable cause to either search or arrest the passenger.

*Id.* at 703–04, 791 A.2d 968. *See also Johnson,* 142 Md.App. at 188, 788 A.2d 678 (recognizing that probable cause to arrest for possession of contraband is more easily found with respect to driver).

We have found no Maryland case in which the only evidence to support a finding of knowledge of contraband was the status of a defendant as both the owner or lessee and the driver of a vehicle ("driver-owner"), and where at least one passenger had equal or greater access to the contraband than did the defendant. Thus, we look to the law of other jurisdictions.

### Cases From Other Jurisdictions

Courts from other jurisdictions have considered whether a defendant's status as a driver, whether or not combined with an ownership or leasehold interest, is sufficient to sustain a finding of possession of the contraband. The driver's guilt of the crime of possession often has turned on whether the court views driver status to be a sufficient basis to permit an inference of knowledge of the contraband. The results are mixed.

### Cases Imputing Knowledge Of The Contents Of A Vehicle To The Driver

Several cases have announced a general rule imputing knowledge of contraband found within a car to the driver of the car. For example, in *United States v. Lochan,* 674 F.2d 960, 966 (1st Cir.1982), the court held that the evidence was sufficient to find that Lochan, the driver of a car owned by the passenger in the vehicle, had knowledge of three pounds of hashish secreted in hollow spaces behind the spare tire in the

trunk, behind door panels, and in the back of the front seats. The court pronounced a general rule:

> Knowledge may be inferred from possession, that is, dominion and control over the area where the contraband is found. Drivers generally have dominion and control over the vehicles that they drive.

*Id.* (citations omitted).

A similar result was reached in *United States v. Whitfield,* 629 F.2d 136, 142 (D.C.Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). There, the court held that Whitfield, the driver and owner of a car in which guns were found under the front seat, could be found to have control of the guns. One gun was found under each side of the front seat, and both were out of sight. One gun was within reach of the driver, the other within reach of the front seat passenger. The court concluded that

> it was not unreasonable for the jury to find Whitfield guilty of possession of one or both of the guns. The jurors could conclude that Whitfield, as the owner and operator of the car, had control over its contents, particularly items within easy reach of the driver's seat.

*Id.* at 143.

In *United States v. Dixon,* 460 F.2d 309 (9th Cir.), *cert. denied,* 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972), the Ninth Circuit affirmed the conviction of a driver who had been driving his own car, in which 30 pounds of marijuana were secreted in the trunk and beneath the rear seat. In a one-page opinion, the court stated: "[T]he simple act of driving a loaded car provides a substantial basis for a conclusion of knowledge." *Id.* at 309. *See also United States v. Westover,* 511 F.2d 1154, 1157 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975)("From the fact that Westover was driving the car, the jury could reasonably infer that he knew of the trunk's contents").

Other cases, while not announcing a general rule, also appear to rely mainly on the status of the defendant as a driver, and sometimes as an owner or lessee, of the vehicle in

which contraband is found. In *Young v. Indiana*, 564 N.E.2d 968 (Ind.App.1991), the court held that the evidence was sufficient to sustain Young's conviction for possession of cocaine found in plastic bags in a spray can located on the back floorboard of the car. Young, who was not proven to be the owner of the car, argued that because he had a passenger in the car when he was stopped, the evidence was insufficient to show that he had control over the spray can. The court stated that "[c]onstructive possession of items found in an automobile may be imputed to the driver of the vehicle." *Id.* at 973.

In *Hammins v. Alabama*, 439 So.2d 809 (Ala.Crim.App. 1983), marijuana was found in the trunk of a car that Hammins was driving. There was one passenger. Hammins first claimed ownership of the vehicle, then denied it. The court reasoned that, owner or not, Hammins was the only individual who had driven it during the two days prior to the marijuana being found, and that he had "complete and total use of the car." *Id.* at 810. The court upheld Hammins' conviction of possession of marijuana, stating that "Hammins, as the driver of the automobile, had complete possession, dominion, and control over the area where the contraband was found, namely, the trunk of the vehicle." *Id.*

In *Tennessee v. Brown*, 915 S.W.2d 3 (Tenn.Crim.App.1995), the owner and driver of a car was convicted of possession of cocaine with intent to sell after a police officer observed a passenger throw two bags of cocaine from the vehicle. The amount of cocaine in the bags totaled 5.06 grams. Although the Court of Criminal Appeals of Tennessee reversed Brown's conviction because of improperly admitted evidence, the court held that the evidence was sufficient to sustain the conviction. *See id.* at 5, 8. The court stated that "knowledge may be inferred from control over the vehicle in which the contraband is secreted." *Id.* at 7. It held that the jury could infer knowledge and possession from the defendant's ownership of the car. *See id.* at 8. Rejecting Brown's contention that the evidence showed only his mere presence in an area where drugs were found and association with a person controlling drugs, the court explained:

The defendant was more than merely present in the area where the cocaine was found and more than just associated with the passenger who tossed the cocaine. The defendant owned the car out of which the passenger tossed the cocaine; he knew the passenger and he was in an area known for drug transactions.

*Id.*

## The Equal Access Rule

Many courts have been willing to draw only a limited inference from the defendant's driver status when the vehicle was jointly occupied. *See generally* Emile Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Automobile of Which Defendant Was Not Sole Occupant,* 57 A.L.R.3d 1319 (2002)(collecting cases). These courts' restrictive views are based on the "equal access rule," under which knowledge of the presence of the contraband cannot be inferred from mere ownership or possession of the vehicle when another person had equal access to the portion of the vehicle in which contraband was found. *See, e.g., Manning v. Florida,* 355 So.2d 166, 166–67 (Fla.Dist.Ct.App.1978)(without direct evidence of defendant's knowledge of marijuana in the unlocked center console, "to which the other passengers had equal access," his position in the driver's seat was not sufficient to support conviction for possession); *Lombardo v. Georgia,* 187 Ga.App. 440, 370 S.E.2d 503, 505 (1988)(equal access rule applies in automobile context when evidence shows persons other than driver had equal access to contraband in trunk; conviction affirmed without such evidence); *Missouri v. Johnson,* 81 S.W.3d 212 (Mo.App.2002)("constructive possession will not be inferred in circumstances where others have had equal access to the vehicle unless there is evidence of additional incriminating circumstances implicating the defendant"); *Pennsylvania v. Wisor,* 466 Pa. 527, 353 A.2d 817, 818–19 (1976)(when passengers had equal access to place where contraband was located, defendant's position in driver's seat was not sufficient to support conviction for possession).

In *United States v. Reece,* 86 F.3d 994 (10th Cir.1996), the Tenth Circuit reversed Reece's conviction for possession with

intent to distribute cocaine found on the person of a passenger in his car. A large sum of money was found in the glove compartment. The passenger acknowledged ownership of the drugs and the money and stated that Reece had no knowledge of either. In reversing Reece's conviction, the court identified the need for a nexus between the defendant and the contraband:

"Dominion, control and knowledge, in most cases, may be inferred if a defendant has exclusive possession of the premises." Where possession is not clear, such as when the contraband may be attributed to more than one individual, constructive possession requires some nexus, link, or other connection between the defendant and the contraband. The jury may draw reasonable inferences from direct or circumstantial evidence, yet an inference must amount to more than speculation or conjecture.

*Id.* at 996 (citations omitted). The court observed that the only evidence that Reece knew of the contraband was a tape recorded conversation between Reece and his passenger, made in the back of a police vehicle after their arrests. The court pointed out, however, that, by the time that conversation occurred, Reece had seen the drugs after they had been taken from the passenger. The court reasoned that "[t]he government's case is barren of evidence linking or demonstrating a nexus between Mr. Reece and the narcotics found on [the passenger's] person and therefore cannot sustain the conviction[.]" *Id.*

In *Mackey v. Georgia,* 234 Ga.App. 554, 507 S.E.2d 482 (1998), Mackey, who previously had lent his car to his brother, was pulled over for improperly stopping in the roadway when he let a passenger out of his car. Less than one gram of cocaine was found under the driver's seat. Mackey was convicted of possession of cocaine, but the Court of Appeals of Georgia reversed the conviction, holding that the defendant's mere status as driver or owner of the vehicle was insufficient evidence of possession:

If the only evidence of possession of contraband found in an automobile is that the defendant is the owner, driver, or is

in possession of the vehicle, and there is evidence of prior use of the vehicle by other parties in the recent past, or equal access to the accessible portions of the vehicle by other parties, then the prior possession or equal access rule would demand an acquittal.

*Id.* at 483 (citation omitted). The Georgia court also held that the State's additional evidence, *i.e.,* Mackey's refusal to permit a search of the vehicle and nervousness when he refused to consent to the search, was insufficient evidence to permit a rational jury to find beyond a reasonable doubt that Mackey had possessed the cocaine. *See id.* at 555, 507 S.E.2d 482.

The Court of Appeals of Florida applied a similar rule in *Moffatt v. Florida,* 583 So.2d 779 (Fla.App.1991). Moffatt was stopped for racing a vehicle, owned by his father, on a highway. A canine alerted to the presence of drugs in the car. A police officer found marijuana and a cassette tape case with four pills under a floor mat on the passenger side of the car. A subsequent search revealed an ice chest containing unopened cans of beer on the driver's side rear seat and a plastic Certs case containing more pills under the chest. Cigarette rolling papers were found in the glove compartment, and clothing and personal belongings of both Moffatt and a passenger were found in the car. The passenger had been left alone in the vehicle while the officer was explaining the traffic ticket to Moffatt. The trial court found Moffatt guilty of possessing the pills in the Certs container discovered under the cooler, but the Court of Appeals of Florida reversed, holding that mere ownership or possession of the car was insufficient.

[I]f the premises where the contraband is found is in joint possession of the accused, knowledge of the presence of the contraband and the ability to control it will not be inferred from ownership or possession but must be established by independent proof.

*Id.* at 781.

An Ohio appellate court imposed a similar requirement of independent proof in *Ohio v. Duganitz,* 76 Ohio App.3d 363,

601 N.E.2d 642 (1991), *cert. dismissed,* 63 Ohio St.3d 1445, 589 N.E.2d 389 (1992). There, a gun was found under a blanket on the front seat, to the right of the driver's seat. Although the gun was placed closer to the driver's side, the court reasoned that the passenger had been alone in the vehicle for approximately one minute "and could have just as easily slid the gun under the blanket." *Id.* at 646. It held that the evidence did not establish beyond a reasonable doubt that Duganitz, the driver of the vehicle, "knowingly carried or had the weapon." *Id.*

Similarly, in *Utah v. Salas,* 820 P.2d 1386 (Utah Ct.App. 1991), the Court of Appeals of Utah held that there was not a sufficient nexus between Salas, the driver and owner of a car, and cocaine found under the back seat of his car where a passenger had been sitting. *See id.* at 1387. One of the officers who stopped Salas testified that the backseat passenger had moved from behind the driver just before the vehicle had been stopped. This court also required independent evidence. "In order to find that the accused was in possession of drugs found in an automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference." *Id.* at 1388. The court observed that, " 'in finding constructive possession of controlled substances in nonexclusive occupancy settings, courts have relied on extensive and detailed factual evidence.' " *Id.* at 1389 (citation omitted). Considering that Salas' wife was a co-owner of the vehicle and that one of the passengers had better access to the spot where the cocaine was found than did Salas, the court found the evidence "inconclusive as to whether defendant knew of or possessed the cocaine." *Id.* The court also noted that a passenger had moved "in a furtive manner just before the traffic stop," and that there was no evidence that Salas had carried a package to his vehicle, had been in or reached to the back seat, had talked suspiciously with the other passengers, or had behaved suspiciously in any way. *See id.*

In *Guevara v. United States,* 242 F.2d 745 (5th Cir.1957), the Fifth Circuit held that the evidence was insufficient to

prove that Guevara, the driver of the vehicle, possessed a package of 50 marijuana cigarettes found on the floor under the seat within reach of either Guevara or his passenger. *See id.* at 747. The court concluded that, under those circumstances, "there [was] no rational connection between ownership or possession of the automobile and possession of the [marijuana] cigarettes." *Id.* The court noted that the vehicle had been unlocked and anyone could have placed the cigarettes in the vehicle, but also observed that the cigarettes could have belonged to the passenger as easily as Guevara. *See id.*

## Countervailing Circumstances Neutralizing Inference From Driver–Owner Status

Later Fifth Circuit cases, decided after *Guevara,* have allowed the jury to infer possession from driver status, *see, e.g., United States v. Prudhome,* 13 F.3d 147, 149 (5th Cir.), *cert. denied,* 511 U.S. 1097, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994), but have limited the application of that inference when countervailing circumstances were present. *See United States v. Stewart,* 145 F.3d 273, 280 (5th Cir.1998); *United States v. Wright,* 24 F.3d 732 (5th Cir.1994).

In *Wright,* the Fifth Circuit held that a sentencing court had insufficient evidence to sustain a finding, during sentencing, that Wright previously had possessed a firearm. The evidence relied on by the sentencing court was that Wright had operated a vehicle, had eluded the police, and had made "furtive movements near the glove box." *Id.* at 735. The glove box in which the gun had been found was locked, however, and the passenger, who was the owner of the vehicle, had the key. The Fifth Circuit explained:

> We recognize that in other cases we have indicated that mere dominion over a vehicle in which a firearm is found can lead to an inference of constructive possession. But in those cases, we were not confronted with such overwhelming countervailing evidence.... [W]hile dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of a weapon found

in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon.

We stress that our holding is conditioned upon this countervailing evidence ... The sentencing court probably would not have erred in finding that Wright constructively possessed the weapon if such countervailing evidence did not exist.

*Id.* (citations omitted).

In the more recent Fifth Circuit case, *Stewart,* the court reversed the driver's conviction, without mention of earlier precedent that mere dominion over a vehicle in which contraband is found can lead to an inference of constructive possession. Although Stewart was the driver of a car owned by the passenger's girlfriend, the Fifth Circuit held that the evidence was insufficient to sustain Stewart's conviction for possession with intent to distribute cocaine. *See id.* The passenger had 96 grams of crack cocaine on his person. *See id.* at 275. Two well hidden guns were found, one under the driver's seat and one under the passenger's seat. The passenger admitted ownership of the guns and cocaine. Stewart was not charged with possession of the guns, but was convicted of possession with intent to distribute cocaine. In reversing Stewart's drug conviction, the Fifth Circuit stated, "Stewart's presence in the vehicle and association with [the passenger] are insufficient to support a reasonable inference that Stewart had any knowledge of the drugs." *Id.* at 277.

### A "Greater Nexus" Limitation

█ We are not persuaded by the "equal access" rule, at least as applied in cases like *Guevara, Duganitz, Mackey,* and *Moffatt,* in which the contraband was equally accessible to the driver or driver-owner and to the passengers. We think the better view is that one's status as a driver-owner is sufficient to permit an inference that the driver-owner has knowledge of contraband in the vehicle ("driver-owner inference"). *Cf. Wallace,* 142 Md.App. at 704, 791 A.2d 968. ("A passenger in a vehicle generally is not perceived to have the kind of control over the contents of the vehicle as does a driver"). The

driver-owner has the keys to the car, as well as legal control over where the car goes and what goes into it. Because the space of a vehicle is confined, a driver-owner generally can monitor what articles are located in it. Thus, we conclude that there is a sufficient factual basis to draw an inference of knowledge from the defendant's driver-owner status. To hold otherwise would allow savvy transporters of contraband to avoid conviction by simply inviting passengers to accompany them on their illegal journeys.

On the other hand, we do not view the driver-owner inference to be as unlimited as the broad language from some cases would suggest. *See, e.g., Westover,* 511 F.2d at 1157; *Dixon,* 460 F.2d at 309. We believe there are circumstances when it would be unjust if the State were able to convict a defendant by relying solely on the driver-owner inference. Rather than limiting this inference by an "equal access" rule, however, we see more wisdom in a "greater nexus" limitation. Under our formulation of this limitation, if there is a greater nexus between the passenger and the contraband than between the driver-owner and the contraband, then the driver-owner should not be convicted based solely on the driver-owner inference. One way, but by no means the only way, to establish a greater nexus is to present evidence that the passenger had better access to the contraband. Other ways would be to show, for example, use (*e.g.,* fingerprints, possession or purchase of ammunition); consciousness of guilt (*e.g.,* incriminating statements, efforts to avoid detection or arrest); or location or size (*e.g.,* a large quantity of the contraband, or contraband hidden in a specially designed compartment).[4] In this case, as discussed below, the greater nexus is established by the location of the gun in relation to the passenger's coat.

---

4. *See, e.g., Missouri v. Johnson,* 81 S.W.3d 212, 215–16 (Mo.App. 2002)("the trier of fact can consider the amount and value of the drugs as tending to show [d]efendant's conscious and knowing possession of the drugs;" passenger's knowledge of contraband in vehicle he rented, to which others had equal access, may be shown by "the presence of a large quantity of the substance, routine access to an area where controlled substances are found; nervousness exhibited during the search of the area; the subject of the controversy in plain view;

Our driver-owner inference with a greater nexus limitation is consistent with the holdings in most of the extraterritorial cases upholding convictions that we have cited. In *Lochan,* the drugs were stored in hollow spaces in the trunk and inside the vehicle, so that no passenger had a greater nexus than the driver. *See Lochan,* 674 F.2d at 963. Similarly in *Dixon* and *Hammins,* the drugs were in the trunk, and there was no evidence that any passenger had access to the trunk. *See Dixon,* 460 F.2d at 309; *Hammins,* 439 So.2d at 810. In *Lombardo,* the driver-owner had the only keys to the trunk, where the cocaine was located, and there was no showing that any passenger had used the trunk. *See Lombardo,* 370 S.E.2d at 505. In *Whitfield,* the loaded guns were under each side of the front seat, giving the driver the same access as the passenger. *See Whitfield,* 629 F.2d at 139. In *Young,* although the drugs were in a spray can on the floorboard in the back seat, there was no indication that the passenger was in the back seat or had more access than Young did.[5] *See Young,* 564 N.E.2d at 973.

Our greater nexus limitation also calls for results consistent with several of the cited cases holding that the inference of knowledge from driver or driver-owner status was insufficient to convict. In *Wright,* the passenger, who was also the owner of the car, had a greater connection because he had the key to the box in which the gun was found. *See Wright,* 24 F.3d at 735. In *Stewart,* the passenger obviously had better access because the drugs were found on his person. *See Stewart,* 145 F.3d at 275. Similarly, in *Reece,* the passenger had a greater nexus because he acknowledged ownership of the contraband.

---

commingling of the controlled substances with the [passenger's] personal belongings; ... the conduct and statements made by the accused;" and a "discernible odor" of drugs or "something used to mask an otherwise pungent smell").

**5.** In *Lochan* and *Young,* the drivers were not established to be the owners or lessees. In our holding today, we address only the instance when a driver owns or leases the car being driven with contraband. We do not reach the question of whether a similar limitation would apply if the driver were not an owner or lessee.

*See Reece,* 86 F.3d at 995. In *Salas,* the passenger had a greater nexus because the contraband was under the back seat where he had been sitting, and he made a furtive motion when the car was stopped by the police. *See Salas,* 820 P.2d at 1388–89.

We find indirect support for the driver-owner inference with the greater nexus limitation in Maryland appellate decisions addressing another criminal law inference-that the possession, either alone or with others, of recently stolen property, unless reasonably explained, is sufficient to support a conviction for theft. *See Butz v. State,* 221 Md. 68, 77–78, 156 A.2d 423 (1959); *Offutt v. State,* 55 Md.App. 261, 263–65, 463 A.2d 876, *vacated on other grounds,* 297 Md. 520, 467 A.2d 181 (1983); Charles E. Moylan, Jr., *Maryland's Consolidated Theft Law and Unauthorized Use* § 12.6 (2002). The possession of recently stolen goods inference is constitutional, and satisfies the requirement that each element of an offense be proven beyond a reasonable doubt. *See Dinkins v. State,* 29 Md.App. 577, 349 A.2d 676, *aff'd,* 278 Md. 238, 362 A.2d 91 (1976). The driver-owner inference, like the possession of stolen goods inference, and other permissible criminal law inferences, is based on a rational connection between the basic fact and the inferred or presumed fact. It is constitutional, so long as it is only a permissible inference, because the fact sought to be inferred (knowledge of the contraband) from proof of the basic fact (driver-owner status) is more likely than not to be true if the basic fact is true. *See* Lynn McLain, 5 *Maryland Evidence* § 303.2 (1987) (discussing cases establishing constitutional standard).

In *West v. State,* 312 Md. 197, 539 A.2d 231 (1988), the Court of Appeals reviewed the conviction of West for stealing a purse from a woman shortly after she left a drugstore. The purse contained a money order that the woman had just purchased. The State presented evidence at trial that the defendant and another man tried to cash the same money order at the store where it was purchased.

In his first attempt to cash the check, on the same day it was purchased, West fled from the store when he was told it

had been reported stolen. When he returned the next day to retrieve the money order, he was arrested. Upon questioning by the police, West claimed, inconsistently, that he had purchased, found, and been given the money order. At trial, he testified that he had purchased it at the drugstore. The victim's son, who had witnessed the purse-snatching, testified that West was **not** the individual who stole the purse.

On appeal, West argued that the evidence was not sufficient to convict him of theft, and could support only a conviction for receiving stolen goods. He maintained that there was no direct evidence that he was the purse snatcher, and that indeed, the only direct evidence indicated that the purse snatcher was someone else. The State argued that because West was shown to be in possession of stolen property, the common law inference from possession of recently stolen goods justified the inference that he was the robber. See id. at 207–08, 539 A.2d 231.

The Court, in explaining its ruling in favor of West, quoted from a 1916 opinion of Justice Cardozo, who explained how the possession of stolen goods inference should operate.

"It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal....

Only half of the problem, however, has been solved when guilty possession fixes the identi[ty] of the offender. There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. But as soon as evidence is offered that the theft was committed by some one else, the inference changes, and he becomes a receiver of stolen goods....

The problem is a hard one. **To solve it we must steadily bear in mind that the inference of guilt to be drawn from possession is never one of law. It is an inference of fact. Other facts may neutralize it, or repel it, or**

render it so remote or tenuous or uncertain that in a
given case we should reject it."

*Id.* at 210–11, 539 A.2d 231 (quoting *New York v. Galbo,* 218
N.Y. 283, 112 N.E. 1041, 1044 (1916)) (citation omitted).
Adopting this rationale, the Court of Appeals held that a fact-
finder could not draw the inference that West was guilty of
robbery because "there is evidence that weighs against the
inference implicating the more serious offense, here robbery.
This contrary evidence is the testimony of [the victim's son]
that West was not the purse snatcher." *Id.* at 211, 539 A.2d
231.

We find Justice Cardozo's analysis of the proper application
of, and limitations on, the possession of stolen goods inference
equally germane to the driver-owner inference. This, too, is a
factual inference that should be rejected if other facts neutral-
ize it, or make it overly tenuous. Evidence that a passenger
in a car had a greater nexus to contraband than the driver-
owner will operate to neutralize the driver-owner inference, so
that it would be unjust to convict a defendant solely on the
basis of the inference. Unless that neutralizing evidence is
present, the driver-owner inference is a valid factual inference
that is sufficient to support conviction.

We caution that the greater nexus limitation is not a bright
line test, but merely a method of analyzing the sufficiency of
evidence used to establish the knowledge necessary to convict
in cases in which the State's case rests solely on a driver-
owner inference. Whether there is a greater nexus is a
factual determination bound to the facts of each particular
case.

### Application Of The Greater Nexus
### Limitation To This Case

■ The remaining question in this case is whether the
location of the gun underneath the passenger's coat in the
trunk was evidence that the passenger had a greater nexus to
the gun than appellant. Although the question is a close one,
we conclude that the location of the gun does suggest that
either the passenger placed the gun there, and then put his

coat on top, or that the gun fell out of the passenger's coat after both were placed in the trunk. Although any back-seat passenger also could have placed the gun there through the passageway between the back seat and the trunk, the mere existence of this passageway is not what drives our decision. We are persuaded, rather, by the location of the gun underneath the coat, which suggests common ownership of the gun and the coat.

If the State had produced other evidence that connected appellant to the gun or the coat, then the driver-owner inference, combined with that other evidence, would have supported a conviction. This was a bare-bones presentation by the State, however. Our review of Trooper Goldstein's testimony, which was transcribed in less than thirteen pages, reveals no other evidence to support a connection between appellant and the gun.

There was no evidence, for example, that appellant opened the trunk for the passenger by using his key in the keyhole on the trunk itself, and thus would have seen the gun at that time. We cannot presume that he did so because in many automobiles the trunk "pops open" by pushing or pulling a device located inside the vehicle. Nor was there evidence of other items that belonged to appellant near the gun in the trunk. When asked by the prosecutor "what, if anything, else ... was in the trunk of the vehicle," Trooper Goldstein replied, non-responsively, "I do remember seeing in the back seat some dryer sheets." Nor was the gun of such a large size that we can infer that appellant knew it was placed there.

Appellant did not attempt to evade Trooper Goldstein, make any incriminating statements indicating knowledge of the gun, attempt to conceal or jettison the gun, or otherwise demonstrate any consciousness of guilt.[6] Appellant's fingerprints did not appear on the gun. Nor was there any evidence that appellant had recently used or possessed a similar gun. Nor were there any other indicia of ownership or use that tied the

---

6. Goldstein testified that appellant was stopped for traveling 79 m.p.h. in a 65 m.p.h. zone, and that he traveled about a tenth of a mile before

gun to appellant, such as, for example, evidence that appellant possessed ammunition for it.[7]

The State relied on an inference to establish appellant's knowledge of the gun. The inference was neutralized by the greater nexus between the gun and the passenger, *i.e.*, the location of the gun under the passenger's coat. If the State had presented any other evidence connecting appellant to the gun, such as that mentioned in the two preceding paragraphs, that evidence, combined with the driver-owner inference, would have supported a conviction. Without such additional evidence, however, the driver-owner inference, when juxtaposed against countervailing evidence suggesting common ownership of the gun and the coat by the passenger, was not sufficient to establish beyond a reasonable doubt that appellant knew of the presence of the gun in the trunk of the vehicle.

**JUDGMENT REVERSED. COSTS TO BE PAID BY HARFORD COUNTY.**

KENNEY, Judge, in which SONNER and SHARER, JJ., join

I concur in the result. I write separately in response to the sufficiency of the evidence issues discussed by the dissenting

---

he stopped. The State does not suggest that this distance was unusual, and it does not appear to us to be so.

**7.** After the trial court found appellant guilty, it asked appellant why he had a rented car from New York. Appellant replied:

My rental car was from Maryland. I rented the car in Maryland, went to New York to go visit my family the weekend before. The car that I had, the brakes was bad. They switched it for me from the same rental company, but they said I had to bring the car back to New York.

Appellant also told the court: "[T]hat Saturday evening I seen my friends, asked what was they doing, would they take a ride with me. They said, 'Yes.' We were going to New York, coming right back. I had no idea that one of the passengers was carrying." *Id.* The State asserts that appellant, "unlike the two passengers in the car, had a reason for being in the car with the handgun. He was traveling to New York to return the car...." We see nothing in a trip to New York to return a rental car that would indicate a need for a gun.

opinions in regard to competing inferences in a case involving only circumstantial evidence.

Here, the State's case rests on circumstantial evidence that appellant "knowingly" transported a handgun while traveling on the public roads and highways of the State of Maryland. As indicated in the various dissents, a greater nexus between the weapon and the alleged transporter may or may not negate or undermine any inference of the transporter's knowledge of the weapon and, thus, the alleged transporter's guilt. Although we are not directly concerned with whether appellant "possessed" the weapon, individually or jointly, evidence of possession might obviously aid an inquiry as to appellant's knowledge of the weapon. In fact, the trial court in this case concluded appellant was in joint possession of the weapon.

Notwithstanding the extended discussion regarding the concepts of "equal access" and "greater nexus," the plurality opinion and the dissents recognize that the ultimate question is whether the evidence was legally sufficient to convict appellant. Concepts of "equal access" and "greater nexus" are no more than analytical aids to be used in evaluating the evidence presented.

As in all criminal cases, it was the State's burden to prove appellant's guilt beyond a reasonable doubt. That burden can be met by the use of direct or circumstantial evidence, but the evidence produced must be sufficient to fairly convince a rational fact finder, beyond a reasonable doubt, of a defendant's guilt. Whether the evidence is sufficient to support a conviction in a particular case is a question of law for the court that does not involve weighing or choosing between competing inferences reasonably generated by the evidence. *See Hebron v. State,* 331 Md. 219, 234, 627 A.2d 1029 (1993). In making that determination, the court is only concerned with whether a claimed inference is reasonably generated by the evidence. Such an analysis does not require the court to select the more persuasive of the inferences, but only to determine that the suggested inference is in accordance with reason.

This exercise, reserved to the court, is different than any implied weighing of inferences of fact by the fact finder in *Jordan v. State*, 219 Md. 36, 148 A.2d 292 (1959), where the competing inferences supported a finding of guilt of both a greater and a lesser offense. Confronted with that situation the Court of Appeals held that the defendant was entitled to the benefit of the doubt and could only be convicted of the lesser offense. In this case, we are faced with an inference of innocence and an inference of guilt. The whole of the evidence admitted by the trial court that was directly related to the transportation charge and resulting in appellant's conviction was produced through the testimony of one officer. The following "facts" were established:

(1) A loaded handgun was found in the trunk of a vehicle rented by appellant "a week or so" earlier and driven by appellant at the time of the incident.

(2) In addition to appellant, two male passengers occupied the vehicle.

(3) One of the two male passengers in the vehicle was in the backseat, from which there was direct access to the trunk.

(4) The handgun was not in plain view, but was covered by a jacket, the ownership of which was claimed by one of the two passengers in the vehicle; the jacket was returned to the passenger.

(5) Everyone in the vehicle disclaimed ownership or knowledge of the weapon.

(6) No effort was made to gather fingerprints from the weapon or the ammunition because the officer had handled the gun.

There was no conflicting testimony and no need to resolve issues of credibility. For our purposes, the "facts" testified to by the officer are the facts. The question is what inferences related to the transportation charge are reasonably generated by those facts. Therefore, there is little value to engaging in speculation about the pockets in the jacket, how access to the trunk might have been gained, who knew what regarding that access, how well the occupants knew one another, or even how

long they had been in the car together. The record is silent on these matters. In the same way, little is to be gained by speculation on what other evidence might have been produced by the State. In the resolution of this case, we can consider only the facts that are presented.

"Circumstantial evidence is proof of a chain of facts that point to a particular conclusion, a conclusion based on reason, experience, collective wisdom and common sense." J.F. Murphy, Jr. MARYLAND EVIDENCE HANDBOOK, § 408 at 135–136 (3rd ed.1999). The general principle regarding a conviction based solely on circumstantial evidence is set forth in *Wilson v. State,* 319 Md. 530, 536–537, 573 A.2d 831 (1990):

A conviction may rest on circumstantial evidence alone. To ensure that the trier of fact bases a finding of guilt on the appropriate degree of certainty, we have long held that a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence. [Citations omitted; emphasis in original.]

The long running discussion in this Court and in the Court of Appeals concerning "single strands" of circumstantial evidence or circumstantial evidence "alone," and its inconsistency with any reasonable hypothesis of innocence has related to whether a case is to be sent to a jury and if a jury instruction reflecting the *Wilson* principle should be provided.

Then Chief Judge Wilner, now of the Court of Appeals, said for this Court in *Hebron v. State,* 92 Md.App. 508, 516–17, 608 A.2d 1291 (1992), *aff'd,* 331 Md. 219, 627 A.2d 1029 (1993), in regard to circumstantial evidence and the effect of *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), in Maryland:

Assuming *arguendo* that a case based solely on a single strand of circumstantial evidence is properly presentable to the jury in the first instance, which we think is not allowed, an instruction on reasonable doubt is all that is needed. If the jury finds from the evidence a reasonable hypothesis of

innocence, it will necessarily entertain a reasonable doubt as to guilt and will be obliged to acquit. . . .

Equally cogent in our view is the fact that, under the language used in *Wilson* and earlier cases, the issue raised by a case resting entirely on a single strand of circumstantial evidence is not one of reasonable doubt, which is for the jury to determine, but of evidentiary sufficiency, which is for the judge to determine. *Wilson,* it will be recalled, confirmed that a conviction based solely on a single strand of circumstantial evidence "is not to be sustained" unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.

**This is, and always has been, a rule relating to evidentiary sufficiency. If the State's case is based *solely* on a single strand of circumstantial evidence and that evidence does not exclude every reasonable hypothesis of innocence, neither the judge nor a jury can lawfully return a verdict of guilty.** [Bold emphasis added; italics in original.]

In affirming this Court's opinion in *Hebron,* 331 Md. at 234–35, 627 A.2d 1029, Judge Bell, now Chief Judge, said for the Court of Appeals:

The cases referring to circumstantial evidence not excluding every reasonable hypothesis of a defendant's innocence are cases in which there is circumstantial evidence of the defendant's guilt and other evidence, either circumstantial or direct, tending to negate that evidence and no basis upon which a rational finder of fact could return a verdict of guilty without speculating as to which of the two versions is the correct version. **A jury faced with that state of the evidence could not logically, nor lawfully, return a guilty verdict;** hence, as the Court of Special Appeals pointed out, given that scenario, "there is nothing for the jury to decide, and, upon proper motion, the judge is duty-bound, as a matter of law, to enter a judgment of acquittal." *Hebron,* 92 Md.App. at 517, 608 A.2d at 1296.

. . .

Whether the evidence is direct or circumstantial, consists of multiple strands or just a single strand, it must initially be considered by the judge for its sufficiency to sustain a conviction. [Emphasis supplied.]

This is consistent with Judge Moylan's statement in *Eiland v. State*, 92 Md.App. 56, 69, 607 A.2d 42 (1992), *rev'd on other grounds*, 330 Md. 261, 623 A.2d 648 (1993):

The small kernel of residual vitality is to be found not in cases where circumstantial evidence of guilt combines with direct evidence of guilt nor even in exclusively circumstantial cases where multiple strands of circumstance point in the same direction, reinforcing and corroborating each other. It is to be found, rather, in those cases where the State's proof of guilt depends exclusively upon a single strand of circumstantial evidence. As part of the very nature of such proof, the circumstance must serve as the predicate for an inference of guilt. **The treacherous language (because it is so frequently abused) simply states the truism that a fact finder could not fairly be convinced beyond a reasonable doubt if the circumstantial predicate could also give rise to *reasonable* inferences of innocence. It is self-evident that a finding of guilt based upon a process of elimination must effectively eliminate the other reasonable possibilities.** *See, e.g., Tucker v. State*, 244 Md. 488, 224 A.2d 111 (1966). [Bold emphasis added; italics in original.]

*See also Davis v. State*, 100 Md.App. 369, 641 A.2d 941 (1994) ("The circumstantial evidence recovered from [appellant's] home and the testimony provided concerning it, therefore, did not eliminate the reasonable possibility that appellant kept the marijuana and paraphernalia strictly for personal use. Likewise, physical evidence presented at trial in no way precluded a conclusion that if kept for use by others, the drugs and paraphernalia were to be used there on only one occasion.").

To be sure, concerns about the policy implications and the practical consequences of that "small kernel of residual vitality" left in *Wilson*, as limited as it is, are valid, especially in

cases involving drugs and guns. This case fairly presents the issue and raises important questions: Can we adequately protect the innocent person without aiding the savvy criminal? Are we to presume guilt, as this statute set out to do, or are we going to continue to require that guilt be proven by the State? Is a driver/owner or lessee of a vehicle obligated to know what his passengers are carrying? Obviously, as a society we want to retain the ability to convict the knowing transporter of contraband, and yet, at the same time, we recognize a need to protect innocent drivers and passengers from guilt by association or as a result of their mere presence at the scene of a crime.

One of the dissenting opinions suggests that, "based primarily upon *Jackson* and *Hebron,* . . . the *Wilson* principle has no practical vitality." (Eyler, James R., J., dissent, op. at 443). Whatever quarrel there may be with the *Wilson* principle it appears to be alive and well even though its appearances are thankfully infrequent. As pointed out by Judge Eyler, *Wilson* was recently cited with approval by the Court of Appeals in *Moye v. State,* 369 Md. at 14, 796 A.2d 821 (2002).

In publishing *Wilson's* premature obituary, I believe too much is read into the quote from *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, 889 (1989), which was included by Chief Judge Bell in *Hebron* and cited in Judge Eyler's dissent. The *Edwards* quote affirms the principle that, in considering the sufficiency of the evidence, the judge is not concerned with the weight of the evidence. Saying that it is the judge's duty to submit the case to a jury if "there be any **substantial** evidence which **reasonably** tends to prove the guilt of the accused, or from which his guilt may be **fairly and logically deduced,**" (emphasis supplied), is not inconsistent with the previous holdings of this Court and the Court of Appeals that, in cases involving only circumstantial evidence, a fact finder could not fairly be convinced beyond a reasonable doubt if that evidence also generates a reasonable inference of innocence. Similarly, *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), speaks of the "rational" trier of fact, *id.,* 443 U.S. at 319, 99 S.Ct. 2781, and that the evidence must "fairly"

support a conclusion that the elements of the crime have been established beyond a reasonable doubt. *See id.,* 443 U.S. at 313–314, 99 S.Ct. 2781. The essence of *Hebron* and *Eiland* is that, in a case dependent upon circumstantial evidence and the inferences generated by that evidence, a fair fact finder, confronted with a reasonable inference of innocence, cannot be fairly convinced of guilt beyond a reasonable doubt. Choosing between two reasonable inferences ultimately involves some speculation.

An inference is a "conclusion reached by considering other facts and deducing a logical consequence from them." BLACK'S LAW DICTIONARY at 781 (7th ed.1999). Neither the plurality opinion nor the dissents appears to take issue with the proposition that the presence of a weapon in a vehicle could support a rational inference that the driver/owner or lessee is "knowingly" transporting a weapon. In other words, a fact finder may, but need not, infer that the transportation of the weapon is done knowingly. *See* MPJI–CP 4:35.3, comment at 438.

Here, however, there are other circumstances. The vehicle had three occupants, at least two of whom, if not all three, might have had access to the trunk, including, in the case of one passenger, direct access to the trunk from the backseat. The weapon was not in plain sight, but was covered by a jacket, ownership of which was claimed by one of the passengers. Thus, the circumstantial predicate permits a reasonable hypothesis of innocence. That the weapon was placed in the trunk by a passenger and covered with a coat without the driver's knowledge is a reasonable possibility that cannot be eliminated without some speculation. In that situation, a rational fact finder could not be fairly convinced beyond a reasonable doubt of appellant's guilt.

Judge SONNER and Judge SHARER authorize me to state that they join in this concurring opinion.

JAMES R. EYLER, Judge, in which MURPHY, C.J., DEBORAH S. EYLER, KRAUSER, and GREENE, JJ., join

As the majority thoroughly reviewed cases with facts sufficiently similar to the one before us to be relevant to its

disposition, there is no need for me to engage in further review of those cases. Factual situations of the type presented are not subject to the formulation of bright line rules. Each case must be determined by its facts, and the question of sufficiency of the evidence must be decided by application of the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). I believe the evidence in the case *sub judice* satisfied the *Jackson* standard, thereby creating an issue that was properly decided by the fact-finder. As a result, I dissent.

Appellate courts do not engage in fact-finding and operate, as they must, under a standard of review. Frequently, the standard of review for a particular issue is expressly set forth in an opinion. Often, however, it is set forth in boilerplate fashion as a lead in to the real subject of the discussion-the merits. I agree with the majority on the standard but disagree on its application to the facts. I believe it is instructive to take a close look at the standard because an in-depth look aids courts in applying the standard in a given case. Additionally, there is language in other cases which, from time to time, creates confusion.

Prior to the adoption of the Federal Rules of Civil Procedure in 1938, the Federal Rules of Criminal Procedure in 1946, the Maryland Rules of Civil Procedure in 1941, and the Maryland Rules of Criminal Procedure in 1949, there was no appellate review of facts by federal or Maryland courts in civil cases at law or in criminal cases. *See Edwards v. State*, 198 Md. 132, 154–55, 83 A.2d 578 (1951). When they were adopted, the Maryland Rules of Criminal Procedure authorized appellate review of the evidence after a non-jury criminal conviction. The standard was clearly erroneous, essentially the same as the standard in present Maryland Rule 8–131(c). This standard was applied in *Edwards,* supra.

The Maryland Rules of Criminal Procedure further provided that, in a jury trial of a criminal charge, a defendant could request an instruction to the jury that the evidence was legally insufficient, but such an instruction was merely advisory. *See*

*Wright v. State,* 198 Md. 163, 169, 81 A.2d 602 (1951). The Maryland Constitution provided that, in criminal cases, the jurors were the judges of law and of fact.

Effective December 1, 1950, the Maryland Constitution was amended to permit a court to pass upon the sufficiency of evidence in a jury trial. This provision currently appears as Article 23 of the Declaration of Rights ("except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."). Article 23 is implemented by Article 27, section 593, of the Maryland Code and by Rule 4–324.

Since 1950, therefore, criminal convictions in non-jury and jury trials have been reviewable for legal sufficiency of the evidence. The interplay between sufficiency of evidence and the degree to which the trier of fact had to be convinced in a criminal case—beyond a reasonable doubt—different from that required in a civil case—coupled with perceived qualitative differences between circumstantial and direct evidence, created some confusion in subsequent cases. There was early and general agreement, however, that there was no real difference in the standard for determining sufficiency of evidence as between jury and non-jury cases. *See, e.g., Williams v. State,* 5 Md.App. 450, 458, 247 A.2d 731 (1968).

In *Edwards,* the Court of Appeals reviewed a criminal conviction after a non-jury trial. The State's evidence was circumstantial in nature. The defendant argued that the State was required to negate to a moral certainty all reasonable hypotheses of innocence, and the State failed to do so. The court, applying the clearly erroneous standard contained in the Maryland Rules of Criminal Procedure, affirmed the conviction. The Court stated that, given the evidence, the result would be the same even if it assumed that circumstantial evidence had to exclude to a moral certainty every reasonable hypothesis other than that of guilt. *See Edwards,* 198 Md. at 157–58, 83 A.2d 578. I discuss *Edwards* because the Court, in *Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951), discussed below, relied on that opinion. I note in passing, however, that *Edwards* seemed to recognize the distinction between the

quantum of proof necessary to present an issue to a fact-finder, on the one hand, and the degree to which the fact-finder had to be convinced, on the other hand.

In *Shelton v. State, supra,* the defendant was convicted by a jury of violating a Prince George's County lottery law. The Court of Appeals reviewed the sufficiency of the evidence under the December 1, 1950 constitutional amendment and held that it was sufficient to support the verdict. The *Shelton* Court referred to *Edwards* and explained that the test of sufficiency was whether the evidence showed directly the fact to be proven or supported a rational inference of the fact to be proven. *See Shelton,* 198 Md. at 412, 84 A.2d 76. This sounds very much like the constitutional test later enunciated in *Jackson.* The Court went on to state, however, that, "[i]n a criminal case the fact must be shown or the inference supported beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. Before a verdict of guilty is justified, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence." *Id.* at 412, 84 A.2d 76 (citing *Bullock v. Commonwealth,* 249 Ky. 1, 60 S.W.2d 108 (1933)).

Interestingly, the Court in *Bullock,* the case relied upon by the *Shelton* Court, after stating that circumstantial evidence must exclude every reasonable hypothesis of innocence, explained that, if circumstances tending to show guilt "are as consistent with" the defendant's innocence as with his guilt, they are insufficient. *See Bullock,* 60 S.W.2d at 110–11. This language implies some weighing of the strength of inferences to be drawn from underlying facts and also implies that excluding every reasonable hypothesis of innocence is not literally required. In other words, these and other early cases wherein the courts affirmed convictions based on circumstantial evidence, did so even though the defendant *could* have been innocent, *i.e.,* the evidence did not rule out innocence. The evidence was simply strong enough to enable the trier of fact to find guilt.

On the federal side, the Supreme Court, in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), rejected the argument advanced by the defendant in *Edwards*. The Court held that if the government's evidence was circumstantial in nature, it was inappropriate to instruct the jury that the evidence must be such as to exclude every reasonable hypothesis other than that of guilt. The Court explained that circumstantial evidence is not qualitatively different from direct evidence, and even though the evidence is circumstantial, the government is not required to negate every possible explanation. The Court further opined that a jury uses its everyday experiences with people and events to weigh the probabilities, and if a jury is convinced beyond a reasonable doubt, a court can require no more. *See Holland*, 348 U.S. at 139–40, 75 S.Ct. 127.

In 1970, the Supreme Court, in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), held that the right to due process prohibits a criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. In 1979, the Supreme Court decided the landmark case of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Court, in rejecting the notion that a mere modicum of relevant evidence is legally sufficient, held that, in viewing the evidence in the light most favorable to the prosecution, the constitutional test is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). The Court explained that the evidence must "fairly" support a conclusion that every element of the crime has been established beyond a reasonable doubt. *See id.* at 313–14, 99 S.Ct. 2781. Finally, I note that in the *Jackson* opinion, the Court reaffirmed *Holland* and stated that if the proven facts support conflicting inferences, a court will presume that the fact-finder resolved the conflict in favor of the prosecution. *See id.* at 326, 99 S.Ct. 2781. The *Jackson* principles were reaffirmed in *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). In that case, the Court stated that it had explained in *Jackson* the defer-

ence owed to the fact-finder, made it clear that *all of the evidence* (not each piece separately) is to be considered in a light favorable to the prosecution, and that the prosecution need not rule out every hypothesis except that of guilt. If conflicting inferences are supported on the record, a court, on review, shall presume the trier of fact resolved the conflict in favor of the prosecution. *See id.* at 296–97, 112 S.Ct. 2482.

Prior to *Jackson,* Maryland courts, on occasion, articulated a standard for sufficiency of the evidence in criminal cases very similar to, if not the same as, that enunciated by the Supreme Court in *Jackson. See, e.g., Nichols v. State,* 5 Md.App. 340, 348–49, 247 A.2d 722 (1968); *Cobb v. State,* 2 Md.App. 230, 234, 234 A.2d 155 (1967). Among other things, the standard recognized that there is no qualitative difference between direct and circumstantial evidence. *See Nichols,* 5 Md.App. at 350, 247 A.2d 722.

Despite the fact that, prior to 1979, many Maryland cases recited the substantive equivalent of the *Jackson* test and, since 1979, the *Jackson* test, and despite the fact many stated there is no difference between direct and circumstantial evidence, there is language in several cases implying that the test is different when circumstantial evidence is present. The case often cited is *Wilson v. State,* 319 Md. 530, 573 A.2d 831 (1990). There the Court of Appeals, after reciting the *Jackson* test, stated that if the State's case consists of circumstantial evidence alone, the circumstances, taken together, must be inconsistent with any reasonable hypothesis of innocence. *See Wilson,* 319 Md. at 535–37, 573 A.2d 831. This case continues to be cited with approval, as recently as in *Moye v. State,* 369 Md. 2, 14, 796 A.2d 821 (2002).

In *Wilson,* the defendant house cleaner was charged with stealing three rings out of an upstairs bedroom in the victim's house. The evidence was that the defendant had been in the upstairs of the house cleaning during the pertinent time period, but that at least five other people also had access to the upstairs of the house during that time period. The defendant was convicted of theft, non-jury. The Court of

Appeals reversed, holding that evidence of the defendant's mere presence in the upstairs area of the house where others also were present, without more, was insufficient. The Court explained that when proof of a fact is based on circumstantial evidence, the trier of fact need not be convinced " 'beyond a reasonable doubt of each link in the chain of circumstances,' " but rather the circumstances are to be considered collectively, with "the final analysis affording the basis of an inference of guilt beyond a reasonable doubt." *Wilson*, 319 Md. at 536, 573 A.2d 831 (quoting *Pressley v. State*, 295 Md. 143, 148–49, 454 A.2d 347 (1983)). The Court continued, however, and stated that "a conviction upon circumstantial evidence alone is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." *Id.* at 537, 573 A.2d 831 (citing *Brown v. State*, 222 Md. 290, 159 A.2d 844 (1960), *Shelton v. State, supra,* and *West v. State,* 312 Md. 197, 539 A.2d 231 (1988)).

In *Brown*, the Court of Appeals repeated the language contained in *Edwards* and *Shelton* and stated that "when guilt is based *solely* on circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every *reasonable* hypothesis or theory of innocence." *Brown*, 222 Md. at 296, 159 A.2d 844 (emphasis in original). The Court added, however, that this did not mean that the inculpatory facts had to be absolutely incompatible with innocence and not susceptible of explanation upon any hypothesis other than that of guilt. *See id.* at 296, 159 A.2d 844.

In West, the defendant was convicted of robbery and related offenses. The charges arose out of a purse snatching incident, and the State's evidence was circumstantial. The Court reversed certain theft convictions based on insufficiency of evidence. The evidence at trial was that the defendant was in possession of property stolen from the victim. The State argued that possession supported an inference of receiving stolen property or of theft. The defendant argued that, because there was direct evidence by a witness that he was not the thief, coupled with evidence that someone was with him when he was found in possession, this vitiated the infer-

ence of theft (distinguished from receiving stolen property).
The Court agreed with the defendant, stating that the evidence would have supported an inference of theft absent evidence to the contrary. The Court stated: "This accords also with the principle, deeply rooted in the common law, that a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence." *West,* 312 Md. at 211–12, 539 A.2d 231 (citing *Hodges Case,* 168 Eng. Rep. 1136–37 (1838); *People v. Galbo,* 218 N.Y. 283, 112 N.E. 1041, 1045 (1916); L. Hochheimer, *The Law of Crimes and Criminal Procedure,* section 158 (1904); *cf.* J. Stephen, *A History of the Criminal Law of England* 438 (1883)).

The Court of Appeals of New York, in *People v. Galbo,* 218 N.Y. 283, 112 N.E. 1041 (1916), reviewed a murder conviction where the State's evidence was that the defendant was found in possession of the body. The Court held that the evidence was insufficient to permit an inference that the defendant was the murderer in the face of other evidence that the victim was large and put up a struggle, and that the defendant was physically handicapped and had no injury. *See Galbo,* 112 N.E. at 1044–45.

This Court, in *Eiland v. State,* 92 Md.App. 56, 607 A.2d 42 (1992), *rev'd sub nom on other grounds, Tyler v. State,* 330 Md. 261, 623 A.2d 648 (1993), reviewed a murder conviction. The defendant, relying on the language in *Wilson* that circumstantial evidence must be inconsistent with any reasonable hypothesis of innocence, argued that the evidence was legally insufficient. This Court stated that *Wilson* reaffirmed *Jackson* as the ultimate test and then expressed doubt regarding the value of the *Wilson* statement in question, but recognized that the *Wilson* Court had, at least, limited the application of the principle to the situation where there is only one strand of circumstantial evidence and no direct evidence. *See Eiland,* 92 Md.App. at 68–69, 607 A.2d 42.

In 1993, the Court of Appeals decided *Hebron v. State,* 331 Md. 219, 627 A.2d 1029 (1993). The Court affirmed a convic-

tion rendered by a jury for breaking and entering a dwelling. The defendant had asked the trial court to instruct the jurors that if they concluded that they could draw a reasonable inference of innocence from the circumstantial evidence presented, they had to find the defendant not guilty. After reiterating the principle that a conviction based solely on circumstantial evidence cannot stand unless the circumstances are inconsistent with any reasonable hypothesis of innocence, the Court held that the principle relates to legal sufficiency—a question of law for the court—and should not be part of instructions to the jury. *See Hebron,* 331 Md. at 233–34, 627 A.2d 1029.

The *Hebron* Court stated that the requested instruction was based on the notion that circumstantial evidence is inferior to direct evidence, a notion rejected by *Holland* and by a number of states, and then observed that Maryland has long held there is no difference between direct and circumstantial evidence, citing several cases from the late 1960's. *See id.* at 226, 627 A.2d 1029. After discussing *Wilson* and similar cases, the Court reiterated the statement from *Wilson* that the principle in question has no application when the circumstances consist of more than a single strand. It then stated: "This is no more than a restatement of the settled proposition that a finding of guilt cannot be based on evidence that equally supports an inference of innocence as well as of guilt." *Id.* at 228, 627 A.2d 1029.

The *Hebron* Court also cited with approval *Jordan v. State,* 219 Md. 36, 148 A.2d 292 (1959). Of significance for present purposes, the Court cited *Jordan* for the proposition that when facts are such as to permit two equally reasonable inferences, one consistent with guilt of a greater offense and the other guilt of a lesser offense, a defendant may be convicted only for the latter. *See Hebron,* 331 Md. at 230–31, 627 A.2d 1029. These statements imply a weighing of inferences.

Finally, in *Hebron,* the Court quoted from a South Carolina case with respect to the standard of review, applicable wheth-

er the evidence is direct or circumstantial and whether it consists of multiple strands or one strand:

> In determining whether to send the case to the jury on circumstantial evidence, the proper standard to be applied by the judge is as follows:
>
>> '[T]he judge is concerned with the existence or nonexistence of evidence, not its weight; and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.'

*Id.* at 234–35, 627 A.2d 1029 (quoting *State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, 889 (1989) (quoting *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924, 926 (1955))).

In my view, based primarily upon *Jackson* and *Hebron,* the *Jackson* constitutional standard is the applicable standard to determine sufficiency of the evidence, and the *Wilson* principle has no practical vitality. First, if there is any direct evidence, the *Wilson* principle does not apply. In that situation, sufficiency of evidence is rarely an issue; the question is one of credibility. Second, in the case of circumstantial evidence alone, the *Wilson* principle applies only when there is a single strand of evidence. Even in that instance, however, the principle is not helpful. Caselaw dictates that direct and circumstantial evidence are to be treated the same. Further, all circumstances are to be considered together and not each piece separately. Finally, the State does not have to exclude all reasonable hypotheses of innocence to get to the trier of fact. Attempting to decide whether there is one strand or multiple strands of circumstantial evidence in a given case does not appear to be helpful. It is a question of the strength of the inferences to be drawn.

If the evidence is solely circumstantial, as *Hebron* indicates, the determination of sufficiency involves some weighing of inferences. In that situation, the strength and genuineness of

inferences, in addition to credibility, have to be assessed in order to decide the ultimate issue. The court decides, in the first instance, as a generalization, whether the inference of guilt, drawn from the circumstantial evidence presented, would permit a fact-finder to be convinced beyond a reasonable doubt, and if so, the case is submitted to the fact-finder for that determination in the particular case before it. If the inferences are such that the fact-finder would have to speculate, the case should not go to the fact-finder.

If the inference of guilt is sufficiently strong, guilt is a fact question, even though the evidence would also support an inference of innocence. In other words, the meaningful test is whether the evidence supports a rational inference from which the trier of fact could fairly be convinced of guilt beyond a reasonable doubt. This test is the same whether the evidence is direct, circumstantial, or some combination of both.

Presumably because of the historical distinction between direct and circumstantial evidence, courts have been more prone to let any and all direct evidence pass the sufficiency test while attempting to formulate a rule for circumstantial evidence other than assessing the strength of the inferences presented. It may be that, at some point, the credibility of direct evidence is so lacking that it cannot meet the sufficiency test. *See, e.g., Kucharczyk v. State,* 235 Md. 334, 337, 201 A.2d 683 (1964) (explaining that the sole prosecution witness's testimony was "so contradictory that it lacked probative force and was thus insufficient to support a finding beyond a reasonable doubt of the facts required to be proven.").

The principle espoused in *Kucharczyk,* however, has been severely limited and is rarely applicable, as this Court cautioned in *Bailey v. State,* 16 Md.App. 83, 294 A.2d 123 (1972): "Some appreciation of the limited utility of the so-called *Kucharczyk* doctrine may be gathered from the fact that it was never applied pre-*Kucharczyk* in a criminal appeal and it has never been applied post-*Kucharczyk* in a criminal appeal." *Bailey,* 16 Md.App. at 94, 294 A.2d 123; *see also Smith v. State,* 302 Md. 175, 183, 486 A.2d 196 (1985)(ruling that "[t]he

type of confusion and inconsistency contained in this and other testimony given by Smith at trial neither rises to, nor even approaches, the level of unreliability which would place it within the narrow ambit of the principle set forth by the Court in *Kucharczyk*."). I perceive no reason why the same reluctance on the part of the courts to prevent a case from going to the fact-finder based on the lack of credibility of a witness's testimony—because contradictory, biased, or otherwise impeached—should not also exist when a case is based on circumstantial evidence. This is particularly true given the notion, well-settled in Maryland, that no preference exists for either direct or circumstantial evidence.

Why should a witness's testimony, impeached by, for example, contradictions, bias, inability to observe, and prior convictions, support a rational inference of guilt, and a strong inference(s) comporting with daily life experiences and with no evidence to the contrary not support a rational inference of guilt? In a given case, whether the inference(s) persuades the trier of fact beyond a reasonable doubt is not decided by the trier of fact in a vacuum. A fact-finder resolves verbal conflicts in testimony by making credibility determinations. Not only in that situation, however, but also when inferences are to be drawn from circumstantial evidence, witnesses communicate through non-verbal, as well as verbal, methods and non-testifying parties communicate through non-verbal methods. The evidence, as a whole, direct and/or circumstantial, should be reviewed by the court to determine if it suffices to support a rational determination of guilt beyond a reasonable doubt.

In applying that standard to the facts of this case, I believe the evidence was sufficient to permit the trier of fact to find guilt. Appellant was the renter and driver of the vehicle. He had been in possession of the vehicle for approximately a week and was in possession of it at the time of the occurrence. Appellant had access to the entire vehicle. Appellant knew the other occupants of the vehicle, and they had been in the car together for a significant period of time. The gun was not in a container or in a secure place such that one might infer

the owner attempted to conceal it from the other occupants. All three occupants, at the time of the stop, denied ownership of the jacket covering the gun. There was evidence that the vehicle had a fold-down rear seat, but it is likely that the seat was not down because there was a passenger in the back. If it were down, it is likely that appellant would have knowledge of that and, therefore, of the presence of the gun. The gun was in the center of the trunk. Assuming the back seat was up, there is no indication that the passengers knew the trunk was accessible from behind the armrest. Even if they did, it was highly unlikely that a passenger could have placed the gun in the center of the trunk and placed a jacket over it, by working through the armrest opening, without appellant's knowledge.

The ownership of the gun is not an element of the crime. Unlike many of the cases relied on for the *Wilson* principle and discussed above, this in not an either-or situation. In other words, it is not a question of which occupant was the gun's owner; all occupants could have had knowledge of the gun. The question is the strength of the inference to be drawn that appellant did have knowledge; there are no inferences pointing in the opposite direction. I assume the majority would have held the evidence was sufficient if appellant had been the sole occupant of the vehicle. The presence of others does not affirmatively show that appellant did not have knowledge; it affects whether the inference of knowledge is sufficiently strong to support a conviction.

Even if I applied the "greater nexus" test enunciated by the majority, I would affirm. As summarized above, there was evidence in addition to the fact that appellant was the driver and lessee of the vehicle. The evidence does not indicate any greater nexus between a passenger and the gun than the nexus between appellant and the gun. There is a strong inference, as the majority recognizes, that appellant had knowledge of the gun. There is no evidence, direct or circumstantial, that he did not have knowledge of the gun. The presence of the passengers weakens the inference that appel-

lant had knowledge, but it does not neutralize or negate the inference.

Cases involving issues of possession or knowledge of illegal items are necessarily fact specific. Society is faced with the dilemma of, on the one hand, enforcing its laws and not enabling an individual to avoid justice by traveling with companions, and on the other hand, not convicting innocent relatives, friends, or bystanders. In such a fact-intensive situation, our system of justice generally relies on the fact-finder to make the critical determination of knowledge *vel non* on a case by case basis. In my view, a fact-finder could be convinced beyond a reasonable doubt that a person in the position of appellant in the instant case had knowledge of the gun. Consequently, because there was enough evidence to support a rational inference of guilt and because the fact-finder was convinced to the appropriate degree—beyond a reasonable doubt—I would affirm.

Chief Judge MURPHY and Judges DEBORAH S. EYLER, KRAUSER, and GREENE have authorized me to state that they join in this dissenting opinion.

KRAUSER, Judge, in which MURPHY, C.J., JAMES R. EYLER, DEBORAH S. EYLER, and GREENE, JJ., join

I respectfully dissent. The issue before us is whether appellant knew he was transporting a firearm; not, as one might surmise from the plurality's opinion, whether he had greater access to that firearm than the passengers of his vehicle. Ignoring that distinction, the plurality engages in a largely irrelevant analysis of one "possession of contraband" case after another. Indeed, almost every case it discusses [1] in

---

1. In its discussion of the equal access rule, the one "knowledge" case the plurality cited was *Ohio v. Duganitz*, 76 Ohio App.3d 363, 601 N.E.2d 642 (1991), *cert. dismissed*, 63 Ohio St.3d 1445, 589 N.E.2d 389 (1992). That case, however, was not an equal access case. There, the Ohio court held that the driver of a vehicle had not knowingly carried a weapon, which was found under a blanket on the front seat between the driver and his front-seat passenger. In so ruling the court heavily relied upon the fact that the passenger had been alone in the car for

its review of the "equal access" rule, which it rejects, or the newly minted "greater nexus" theory, which it embraces, is a case in which the central issue is possession, not knowledge. The difference is important.

Access plays a key role in establishing possession, but it does not necessarily play a role in establishing knowledge, a component of the crime of possession. Whether appellant had greater access to the firearm found by police than his passengers is not dispositive; it is only a factor in determining whether appellant knew that he was transporting a firearm.

Indeed, it is not hard to imagine circumstances under which appellant, as the driver of the vehicle, would have less access to the contraband than any of his passengers or even no access at all and still have knowingly transported a firearm. Had one of his passengers, for example, entered his car openly carrying a gun and had appellant agreed to transport the gun and his passenger to a particular location, should it make any difference that his passenger had greater access to the gun than he did? Or what if appellant had been asked to drive a truck, the locked cargo compartment of which was loaded with firearms, but given no key or other access to the truck's cargo and, to make matters more interesting, what if he had even been instructed that under no circumstance was he to enter the cargo compartment where an armed guard was stationed? As long as he knew what he was transporting would he be any less guilty of knowingly transporting firearms because he had no access to the contraband? The answer, of course, is no.

Nonetheless, I do agree with the plurality's rejection of the equal access rule. Under that rule, according to the plurality, "knowledge of the presence of the contraband cannot be inferred from [one's] ownership or possession of the vehicle when another person had equal access to the portion of the

---

approximately one minute after the driver had exited "and could have just as easily slid the gun under the blanket." *Id.* at 646. Thus, the case's holding had little to do with equal access and a lot to do with the opportunity of the passenger, in the absence of the driver, to conceal the weapon from him and others.

vehicle in which contraband was found." That definition, I must point out, actually recasts a standard applied by some courts in determining possession. Indeed, if one simply substitutes the word "possession" for the phrase "knowledge of the presence," the first four words of the plurality's definition of the equal access rule, a correct statement of that rule emerges. To quote *Lombardo v. Georgia*, 187 Ga.App. 440, 370 S.E.2d 503 (1988), one of the cases relied upon by the plurality in support of its curious rewording of that rule:

> The equal access rule, 'as it applies in the automobile context, is merely that evidence showing that a person or persons other than the owner or driver of the automobile had equal access to contraband found in the automobile may or will, depending upon the strength of the evidence, overcome the presumption that the contraband was in the exclusive possession of the owner or driver.'

*Id.* at 505(quoting *Mendez v. Georgia*, 185 Ga.App. 1, 363 S.E.2d 262 (1987)(internal citation omitted)).

It is clear from this definition that the equal access rule is a rule for determining possession not knowledge. Whatever value that rule has in determining possession, it has little applicability when the issue is knowledge.

After rejecting the equal access rule—reaching the right result for the wrong reasons—the plurality promulgates what it calls the "greater nexus rule." As formulated by the plurality, that rule provides that "one's status as a driver-owner is sufficient to permit an inference that the driver-owner has knowledge of contraband in the vehicle" unless "there is a greater nexus between the passenger and the contraband than between the driver-owner and the contraband:" right rule; wrong case. An interesting standard, it deserves consideration the next time we have a case before us involving contraband found in a vehicle, occupied by a driver and at least one passenger, where possession is the issue. Until then, it is a rule in search of a case. The nexus between the contraband and a passenger, although crucial in a posses-

sion case, is not necessarily determinative of what the accused knew.

Here, there was sufficient evidence from which the fact-finder could conclude that appellant knew that he was transporting a gun. Based upon appellant's exclusive use and possession of the vehicle, as its lessor and driver, for a week before he was stopped by police, knowledge of the vehicle's contents could reasonably be imputed to appellant. That point was made by the plurality and I agree. In its words, "one's status as a driver-owner is sufficient to permit an inference that the driver-owner has knowledge of contraband."

Explaining how it reached this conclusion the plurality writes: "The driver-owner has the keys to the car, as well as legal control over where the car goes and what goes into it. Because the space of a vehicle is confined, a driver-owner generally can monitor what articles are located in it. Thus, we conclude that there is a sufficient factual basis to draw an inference of knowledge from the defendant's driver-owner status." "To hold otherwise," the opinion warns, "would allow savvy transporters of contraband to avoid conviction by simply inviting passengers to accompany them on the illegal journeys." On this point, the logic of that opinion is sound and compelling.

But that rule, as the plurality notes, cannot be blindly applied in all circumstances, particularly, where countervailing evidence suggests that the driver-owner had no knowledge of the presence of the contraband in his vehicle. In an effort to qualify that rule to accommodate the ever shifting sands of circumstances, the plurality, taking its cue from its own misconstruction of the equal access rule, promulgates the so-called "greater nexus" rule. Under that rule, the plurality declares, if a greater nexus exists between a passenger of that vehicle and the contraband, then the driver-owner can not be convicted of knowingly transporting a firearm based solely on the driver-owner inference. And how does the plurality define "nexus?" In this case, it equates nexus with access to the contraband. That equation is unfortunate. The plurality's

willingness to make the outcome of this case depend on relative degrees of access to the trunk, for the reasons I have limned, is the result of its ill-advised conflation of access with knowledge.

But, interestingly enough, even under the plurality's "greater nexus" theory, which, in this case, the plurality applies by comparing the driver access to the firearm in question to the passenger's, there is sufficient evidence to support appellant's conviction for knowingly transporting a firearm. At all times, as far as we know, appellant enjoyed a greater degree of access to the trunk of his vehicle than either of his two passengers. As the driver and lessor of the vehicle in question, appellant had exclusive control over access to the trunk. Presumably, and there is no evidence to the contrary, he alone had the keys to the trunk. And even if the trunk could have been opened by a pop-up mechanism, as the plurality suggests without any evidence that such a mechanism was even present, that mechanism, because of its location, might also have been under the exclusive control of the driver. Consequently, neither passenger could have obtained access to the trunk without the approval and assistance of appellant. The converse, however, is not true.

Appellant, as the driver, did not need the approval or assistance of either passenger to enter the trunk. Indeed, as the driver of that vehicle, appellant enjoyed greater control over the trunk than he did over the passenger compartment of the vehicle which he shared with his passengers. It is important to remember that the trunk is in reality only a large container and that appellant was the only one with the key to it.

That a jacket of one of the passengers was found lying over the gun should not play the dispositive role assigned to it by the plurality. There is little reason to infer that it was the passenger, rather than appellant, who placed it there, and certainly no basis to infer that the gun was placed there by the passenger without appellant's knowledge, because, as stat-

ed earlier, the passenger needed appellant's approval and assistance to gain entry.

Even more disheartening, the plurality, without a shred of supporting evidence, concludes "that the location of the gun does suggest that either the passenger placed the gun there, and then put his coat on top, or that the gun fell out of the passenger's coat after both were placed in the trunk." Given that no evidence was presented that the jacket even had pockets or that the pockets were large enough to accommodate a gun or that the gun could be easily dislodged from the pockets imagined by the plurality or, more important, that appellant was not present when the gun was placed in the trunk and had no knowledge that this was being done, the plurality's suppositions never rise above the level of rank speculation. Yet, it holds, as a matter of law, that the fact-finder could not have drawn the more reasonable inference that the jacket in question was placed on top of the gun to conceal it from public view when the trunk was open and that the gun was placed if not by appellant then with his knowledge and assistance.

Finally, the fact that the trunk could have been accessed from the interior of the passenger compartment by pulling down the rear seat armrest was given short shrift by the plurality and, in my view, rightly so. As the court stated, "[a]lthough any back-seat passenger also could have placed the gun there through the passageway between the back seat and the trunk, the mere existence of this passageway is not what drives our decision." Presumably, the plurality recognized, in the absence of any evidence that the owner of the jacket had any knowledge of, let alone access to, that passageway, (he might well have been the occupant of the front seat, not the back, at the time the car was stopped by police) that it would have required piling unsupported inference upon unsupported inference to arrive at the conclusion that the owner of the jacket had equal or greater access to the trunk than the driver.

It can therefore be said that, even under the more demanding equal access rule, there was sufficient evidence to warrant a finding of knowledge. If that is so, then, of course, there was sufficient evidence under the plurality's less demanding greater nexus rule. In short, under either of these misapplied standards, there was sufficient evidence to conclude that appellant knowingly transported a firearm.

Chief Judge MURPHY and Judges JAMES R. EYLER, DEBORAH S. EYLER, and GREENE have authorized me to state that they join in this dissenting opinion.

MURPHY, Chief Judge, in which JAMES R. EYLER, DEBORAH S. EYLER, KRAUSER, and GREENE, JJ., join

While I join in the dissenting opinions filed by Judge Eyler and Judge Krauser, I wish to note the following additional reasons why appellant's conviction should be affirmed. First, the majority applies an "access" doctrine that is inapplicable to "joint" possession cases. It is well settled that "the equal access doctrine does not apply to those charged with being in joint constructive possession of contraband." *Fain v. State,* 211 Ga.App. 399, 439 S.E.2d 64, 66 (1993). The "greater access" doctrine is just as inapplicable.

Second, evidence establishing a defendant's knowledge that there is a gun in his or her vehicle is distinguishable from evidence establishing that the defendant is in constructive possession of the weapon. In *Shell v. State,* 307 Md. 46, 512 A.2d 358 (1986), while rejecting the contention that voluntary intoxication is a defense to the crime of "knowingly transporting a handgun in a vehicle," the Court of Appeals stated that "[t]he legislative purpose [in amending the statute to add the word "knowingly"] seems only to have been the exclusion of innocent violations, so that a person who shows that he was not aware that his vehicle was transporting a handgun will not incur penalties." *Id.* at 69, 512 A.2d 358. By equating "possession" with "transporting," the majority opinion overlooks the well established principle of statutory construction that "[i]f there is no clear indication to the contrary, and it is

reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory." *Green v. Taylor,* 142 Md.App. 44, 52–53, 787 A.2d 840 (2001) (*quoting Thomas v. Police Comm'r of Baltimore City,* 211 Md. 357, 361, 127 A.2d 625 (1956)).

Assume that in the case at bar (1) appellant had been charged in a two count indictment, the first count charging "unlawful carrying," and the second count charging "unlawful transporting," (2) appellant elected to be tried by a jury, (3) the jurors received the very same evidence that was presented to the trial judge, and (4) the court is now holding an instructions conference.[1] Under the theory set forth in the majority opinion, the instructions as to the "carrying" count would be no different from the instructions as to the "transporting" count. I disagree with that conclusion.

In *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), a majority of the United States Supreme Court concluded that (1) the phrase "carries a firearm" (as that term appears in *18 U.S.C.S. § 924* (c)(1), which proscribes carrying a firearm during and in relation to a drug trafficking offense) is not limited to carrying of firearms on the person, and (2) " 'transport' is a broader category that includes 'carry' but also encompasses other activity." 524 U.S. at 135, 118 S.Ct. at 1918. Thus, the correct "carrying" instructions would be based upon the principles of (actual, constructive, and joint) possession,[2] while the correct "trans-

---

1. According to the majority, there would be no instructions conference because appellant is entitled to a judgment of acquittal on both counts.

2. The court could have modified the following portion of the recommended instruction for use in cases involving possession of a Firearm by a Convicted Felon (18 U.S.C. § 922(g)):

   To "possess" means to have something within a person's control. This does not necessarily mean that the defendant must hold it physically, that is, have actual possession of it. As long as the firearm is within the defendant's control, he possesses it. If you find that the defendant either had actual possession of the firearm, or that he had the power and intention to exercise control over it, even though it was

porting" instructions would make it clear that—even if the jurors were not persuaded that appellant was in joint constructive possession of the handgun—he should be found guilty of the "knowingly transporting" violation if the jurors were persuaded beyond a reasonable doubt that he drove the vehicle with knowledge that the handgun was in the trunk.

---

not in his physical possession, you may find that the government has proven possession.

The law also recognizes that possession may be sole or joint. If one person alone possess it, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the firearm. This is called joint possession. If you find that the defendant had such power and intention, then he possessed the firearm under this element even if he possessed it jointly with another. Proof of ownership of the firearm is not required.

To satisfy this element, you must also find that the defendant knowingly possessed the firearm. This means that he possessed the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the defendant knew that he was breaking the law.

Matthew Bender & Company, 2–35 Modern Federal Jury Instructions—Criminal P 35.07, Form Instruction 35–49 (2001). *See also United States v. Martinez*, 588 F.2d 495 (5th Cir.1979), which expressly approved the following instruction:

Now, the law recognizes two kinds of possession: actual possession and constructive possession.

A person who knowingly has direct physical control of a thing at a given time is then in actual possession of it. I've got a pencil here. I'm in actual possession of this pencil.

A person, who although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing either directly or through another person or persons is then in constructive possession of it.

I have pencils on my desk in my chambers. My law clerk will go get them for me if I want them. And that's possession, also. That's constructive possession.

The law recognizes, also, that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole.

If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession either alone or jointly with others.

588 F.2d at 498 n. 3.

I am persuaded that the State's evidence was sufficient to generate a jury issue on both the "carrying" count and the "transporting" count. A reasonable trier-of-fact could reasonably conclude that appellant was in constructive possession of the handgun. In *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983), the Supreme Court of Pennsylvania pointed out that the doctrine of joint constructive possession is necessary to prevent "a privileged sanctuary for the storage of illegal contraband," and without that doctrine, "[s]imply by storing contraband in a place controlled by more than one party, a spouse, roommate, partner, would render all impervious to prosecution." *Id.* at 136. While joint constructive possession must be proven by inference, "[t]here are few facts, even ultimate facts, that cannot be established by inference." *Moore v. State*, 73 Md.App. 36, 45, 533 A.2d 1 (1987).

> There is nothing mysterious about the use of inferences in the factfinding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts.

*Robinson v. State*, 315 Md. 309, 318, 554 A.2d 395 (1989). A reasonable trier-of-fact can reasonably infer that a person who has the key to the trunk of a vehicle is in constructive possession of the items contained therein. *United States v. Martinez*, 588 F.2d 495, 498–99 (5th Cir.1979); *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir.1993).

The permissive inference that appellant had knowledge of the presence of the handgun is even stronger than the inference that it was his gun. Yet, according to the majority, the evidence presented against appellant in this case would not get to a jury because no rational trier-of-fact could conclude beyond a reasonable doubt that appellant had knowledge of the presence of a handgun in the trunk of the vehicle that he (1) had rented, and (2) was driving on the occasion when the handgun was discovered.

Appellant's conviction should be affirmed.

Judges JAMES R. EYLER, DEBORAH S. EYLER, KRAUSER, and GREENE have authorized me to state that they join in this dissenting opinion.